**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| RICOH CORPORATION, *et al.*,<br>Plaintiffs/Counter Defendants,<br>v.<br>PITNEY BOWES, INC.,<br>Defendant/Counterclaimant. | Civ. No. 02-5639 (GEB)<br><br>**MEMORANDUM OPINION** |

**BROWN, C.J.**

This matter comes before the Court upon the Motion for Judgment as a Matter of Law of Plaintiffs Ricoh Corporation and Ricoh Company, Ltd. (collectively, "Plaintiff" or "Ricoh"), and the Motion for Judgment as a Matter of Law of Defendant Pitney Bowes, Inc. ("Defendant" or "Pitney Bowes"). The Court has decided the motions without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, the Court will deny both motions.

**BACKGROUND**

Since much of the factual background and procedural history of this case has been addressed at length in this Court's prior opinions, the Court will only address the essential facts here. Plaintiff Ricoh Corporation filed a Complaint on November 26, 2002, alleging that Pitney Bowes' mailing machines infringed 18 claims of Ricoh's patents numbers 5,544,289 (the "'289 patent"), 5,568,618 (the "'618 patent"), 5,649,120 (the "'120 patent"), and 5,774,678 (the "'678 patent") (collectively, the "Motoyama patents").[1] (Ricoh Br. at 1; Compl. ¶ 1.) In response, Pitney Bowes argued that Ricoh's Motoyama patents were invalid on the grounds of obviousness

[1] While Plaintiff's Complaint included other allegations, only the infringement claims relating to the '289, '618, '120 and '678 patents were addressed at trial.

or, in the alternative, anticipation. (Third Am. Answer ¶ 95.)

These issues were tried before a jury on October 31, 2006. On November 30, 2006, the jury returned a verdict finding that Pitney Bowes' products literally infringed all 18 of the Motoyama patent claims at issue, but that those claims were invalid on the grounds of anticipation.

On December 21, 2006, Ricoh filed a motion for judgment as a matter of law, claiming that the jury's finding on anticipation should be overturned and that the Court should find in favor of Ricoh on the issue of obviousness – an issue not decided by the jury in light of its verdict of anticipation. In the alternative, Ricoh requested a new trial on the issue of anticipation. On the same day, Pitney Bowes filed a motion for a judgment as a matter of law seeking to have the jury's finding of infringement overturned.

**DISCUSSION**

**I. STANDARD**

A motion for judgment as a matter of law under Federal Rule of Civil Procedure 50(b) "should be granted only if, viewing the evidence in the light most favorable to the nonmovant and giving it the advantage of every fair and reasonable inference, there is insufficient evidence from which a jury reasonably could find liability." *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1166 (3d Cir. 1993); *Mandile v. Clark Material Handling Co.*, 131 Fed. Appx. 836, 838 (3d Cir. 2005). "In determining whether the evidence is sufficient to sustain liability, the court may not weigh the evidence, determine the credibility of witnesses, or substitute its version of the facts for the jury's version." *Lightning Lube*, at 1166, *citing Fineman v. Armstrong World Indus., Inc.*, 980 F.2d 171, 190 (3d Cir. 1992).

"The question is not whether there is literally no evidence supporting the party against whom the motion is directed but whether there is evidence upon which the jury could properly find a verdict for that party." *Lightning Lube*, at 1166, *quoting Patzig v. O'Neil*, 577 F.2d 841, 846 (3d Cir. 1978); *see also Raiczyk v. Ocean County Veterinary Hospital*, 377 F.3d 266, 268 (3d Cir. 2004) ("A judge may overturn a jury verdict only when, as a matter of law, the record is critically deficient of that minimum quantity of evidence from which a jury might reasonably afford relief.") (quotations omitted).

## II. APPLICATION

### A. RICOH'S MOTION FOR JUDGMENT AS A MATTER OF LAW ON THE ISSUE OF ANTICIPATION

Ricoh argues that Pitney Bowes failed to present substantial evidence that any of the 18 asserted patent claims are anticipated, and that Ricoh is therefore entitled to judgment as a matter of law on Pitney Bowes' anticipation defense. The Court disagrees.

The law governing the anticipation of a patent is well-settled. Under 35 U.S.C. § 102, a person is entitled to a patent unless the invention was "described in a printed publication in this or a foreign country . . . more than one year prior to the date of the application for patent in the United States." 35 U.S.C. § 102(b). A finding of invalidity based on anticipation under 35 U.S.C. § 102 requires a determination that "each and every limitation is found either expressly or inherently in a single prior art reference." *PIN/NIP, Inc. v. Platte Chem. Co.*, 304 F.3d 1235, 1243 (Fed. Cir. 2002) (quoting *Celeritas Techs., Ltd. v. Rockwell Int'l Corp.*, 150 F.3d 1354, 1360 (Fed. Cir. 1998)). Because a patent that was issued by the Patent and Trademark Office enjoys a presumption of validity, the evidence supporting such a finding must be clear and

convincing. *Id.* Whether a patent is anticipated by a prior art reference is a question of fact. *Schumer v. Lab. Computer Sys.*, 308 F.3d 1304, 1315 (Fed. Cir. 2002).

1. Ricoh's Argument

Ricoh contends that Ms. Fredriksen, Pitney Bowes' expert, completely failed to address the elements of 12 of the 18 claims. Indeed, Ricoh submits that Ms. Fredriksen improperly

> attempted to shift Pitney Bowes' burden to prove invalidity to Ricoh by basing her testimony on the premise that her obligation to address an element of a patent claim was eliminated or lessened if Ricoh's expert, Dr. Adams . . . that the particular element was absent from the prior art references on which Pitney Bowes was relying [for its anticipation defense].

Ricoh Br. at 14. Ricoh argues that Pitney Bowes' approach to proving anticipation through Ms. Fredrikssen's 'pre-checking' method was "inherently defective" as a matter of law, and objects in particular to Ms. Fredriksen's allegedly telling "the jury [repeatedly] that the[] pre-checked limitations were not disputed by Ricoh . . . ." *Id.* at 14-15.

In addition, Ricoh posits that even if Dr. Adams did concede the anticipation of a number of claims, his statements cannot be deemed to be admissions by Ricoh "because Dr. Adams is an independent expert witness . . . ." *Id.* at 18. His statements should therefore, it claims, be understood to be "merely expressions of his opinions as an expert witness . . . ." *Id.* Ricoh concludes that any admission of anticipation by Dr. Adams is not binding on Ricoh. *Id.*

As for the six remaining claims, Ricoh argues that Ms. Fredriksen's testimony rests upon "fundamental mis-characterizations of the claim elements and the prior art disclosures that no reasonable juror could accept as clear and convincing evidence of anticipation." *Id*. at 36. Indeed, Ricoh claims that "none of Pitney Bowes' prior art references discloses the separate

operation panel that is central to the Motoyama invention," *id.* at 37, and claims that Pitney Bowes failed to present substantial evidence of anticipation of claim 69 of the '289 patent, claim 141 of the '120 patent, claim 31 of the '678 patent, and all the claims it seeks to invalidate with the '507 patent. *Id.* at 39, 46, 51.

More generally, Ricoh argues that to the extent Ms. Fredriksen did address the claim elements, she failed to explain in detail how each claim element is disclosed in a prior art reference. *Id.* at 19. First, Ricoh contends that Ms. Fredriksen "failed to explain the 'function' and 'structure' requirements of the asserted means-plus-function claims, and/or to show that these requirements are satisfied in the prior art references." *Id.* at 19. Second, Ricoh claims that Ms. Fredriksen "failed to address adequately the limitations of the . . . non-means-plus-function apparatus claims," noting that such limitations "can be anticipated only if a prior art reference discloses 'every element of the claimed invention' and does so 'identically.'" *Id.* at 30.

Finally, Ricoh submits to the Court that "Ms. Fredriksen failed to address [for all of the asserted claims] . . . the Federal Circuit's linkage requirement that she detail how each claim element is disclosed in a prior art reference." *Id.* at 31. Indeed, Ricoh contends that "Ms. Fredriksen did not even purport to meet th[is] requirement[], or indeed to match each claim limitation with any disclosure in the prior art reference at all." *Id.* at 31.

2. Pitney Bowes' Argument

Pitney Bowes, predictably, takes exception with Ricoh's characterization of the evidence offered at trial. As a threshold matter, Pitney Bowes argues, that "[a]lthough the testimony of Ms. Fredriksen . . . is sufficient *by itself* to establish invalidity, it is also entirely appropriate to consider the testimony of Dr. Adams in evaluating Ricoh's motion for judgment as a matter of

law on the issue of invalidity." PB Opp'n at 8 (emphasis in original).

Turning to the substance of the evidence offered at trial, Pitney Bowes insists that the testimony of both Dr. Fredriksen and Dr. Adams establishes that 10 of the 18 claims are anticipated by Pitney Bowes' '507 patent. *Id.* at 9. Pitney Bowes also claims that "[i]t is *uncontested* that 2 of the remaining 8 claims . . . are anticipated by the SCSI-2 specification and the LaserWriter Reference." *Id.* at 15 (emphasis added).

According to Pitney Bowes, "Ricoh's assertion that Pitney [Bowes'] evidence on anticipation was insufficient is absurd." *Id.* at 22. Pitney Bowes submits that it would have been "both illogical and wasteful to require a party to put forth exhaustive evidence on elements to which there is no dispute. Where Dr. Adams admitted certain elements were present in the prior art, no additional testimony [was] necessary." *Id.* Pitney Bowes also contests Ricoh's claim that Ms. Fredriksen "pre-checked" elements without discussing them. *Id.* at 25. Instead, Pitney Bowes claims that "Ms. Fredriksen specifically testified that she checked those claim limitations that had not been contested by Ricoh, [and] testified that she had 'reviewed specific evidence in that context in the overview as well, and the evidence that she described there applies to these elements." *Id.* In support of its position, Pitney Bowes submits to the Court a table purporting to establish that Ms. Fredriksen, contrary to Ricoh's assertions, did in fact "present testimony and direct the jury to page and line citations to the prior art references to show that each and every claim limitation is taught in the prior art." *Id.* at 26.

Finally, Pitney Bowes argues that "the contested issues regarding the remaining six claims are factual disputes that were properly decided by the jury." *Id*. at 18. Indeed, Pitney Bowes claims that "the jury correctly decided that the prior art references disclose an 'identity' of

the operation terminal or computer which is required by claim 69 of the '289 patent and claim 141 of the '120 patent." *Id.* at 19. Moreover, Pitney Bowes argues that "the jury correctly decided that the prior art anticipates claims 4, 19, 77 and 94 of the '120 patent" as Ms. Fredriksen testified that both the '507 patent and the SCSI-2 specification teach the disputed limitations. *Id.* at 21.

3. Analysis

As a threshold matter, this Court rejects Ricoh's contention that the Court cannot look to Dr. Adams' testimony in assessing whether sufficient evidence of invalidity has been offered at trial. "On a motion for judgment as a matter of law, the court's task is to determine whether there is substantial evidence to support the jury's verdict." *Princeton Biochemicals, Inc. v. Beckman Coulter, Inc.*, No. 96-5541, 2004 U.S. Dist. LEXIS 11918, at *29 (D.N.J. June 17, 2004), *aff'd* 411 F.3d 1332 (Fed. Cir. 2005), *citing Dawn Equip. Co. v. Ky. Farms, Inc.*, 140 F.3d 1009, 1014 (Fed. Cir. 1998). "Substantial evidence is such relevant evidence *from the record taken as a whole* as a reasonable mind might accept as adequate to support the finding under review." *Princeton*, at *29, *quoting Verdegall Bros., Inc. v. Union Oil Co.*, 814 F.2d 628, 631 (Fed. Cir. 1987), *cert. denied*, 484 U.S. 287 (U.S. Oct. 5, 1987) (86-1994).

Ricoh appeared to move for a judgment as a matter of law on the issue of anticipation shortly before the close of Pitney Bowes' case (and prior to its own rebuttal case), arguing that Dr. Fredriksen had erred in claiming that she did not need to address elements of claims deemed anticipated by Dr. Adams. 11/17/06 Tr. P.M. 15:20-17:2. The Court reserved judgment on the motion at that juncture. *Id.* at 22:1-2. The Court now denies that motion on the basis of the record as it stood then.

Ricoh then proceeded to put forth its rebuttal case, which included further testimony from Dr. Adams. Ricoh's renewed motion for judgment as a matter of law was filed long after the close of testimony, and after the jury had reached a verdict. The Court will therefore consider both Dr. Adams' and Dr. Fredriksen's testimony in assessing Ricoh's instant motion for judgment as a matter of law. *See Princeton* at *29 (court to consider record as a whole in reviewing motion for judgment as a matter of law under Rule 50(b)), *see also Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 149-50 (2000) ("[I]n entertaining a motion for judgment as a matter of law, the court should review all of the evidence in the record.").

The Court also holds that Pitney Bowes' decision to present evidence of anticipation only as to the claims they deemed contested by Ricoh need not lead this Court to a judgment as a matter of law that no reasonable jury could have found that Ricoh's patents were anticipated. As Ricoh correctly points out, the Federal Circuit in *Schumer* held that:

> Evidence of invalidity must be clear as well as convincing. Typically, testimony concerning anticipation must be testimony from one skilled in the art and must identify each claim element, state the witnesses' interpretation of the claim element, and explain in detail how each claim element is disclosed in the prior art reference. The testimony is insufficient if it is merely conclusory.

*Schumer*, 308 F.3d at 1315-16, *citing Techsearch, L.L.C. v. Intel Corp.*, 286 F.3d 1360, 1372 (Fed. Cir. 2002), *cert. denied,* 71 U.S.L.W. 3283 (U.S. Oct. 21, 2002) (No. 02-262). Unlike in *Schumer*, however, the jury in the case at bar was presented with substantial evidence that *both* parties agreed that those claims had been anticipated – the jury did not therefore merely rely on conclusory testimony from one party on the issue. Indeed, Dr. Adams:

- testified that the elements of claim 43 of the '289 patent were met by the '507 device, except that they didn't have "Motoyama-like" structure. 11/21/06 A.M.

Tr. 182:8-13. That criterion, however, is not among the limitations of claim 43.

- testified that if all the elements of claim 43 are met, then all the elements of claims 147 and 150 of the '120 patent are also met. *Id*. at 182:4-7.

- testified that the only limitation of claims 62 and 64 of the '289 patent missing from the '507 patent was the "operation panel," a limitation which had been defined in the Court's Markman Opinion as "an input/output device which can input commands and display information," *Id.* at 183:18-184:12. Dr. Adams also testified, however, that the external devices in the '507 patent can input commands and display commands. *Id*. at 184:13-23.

- testified that the only limitation of claims 72 and 75 of the '289 patent not present in the '507 patent was the "operation terminal," but also testified that the '507 patent's control unit met the Court's definition of an operation terminal. *Id*. at 176:10-16, 187:16-188:6.

- testified that the only limitation of claims 2 and 3 of the '618 patent not present in the '507 patent was the "operation panel," but, again, also testified that the '507 patent disclosed external devices that can be used to input and display commands. *Id*. at 188:17-189:10, 184:13-23.

- testified that there were two limitations of claim 68 of the '289 patent not disclosed in the '507 patent: the "operation panel," and the "means for initiating communication between the business office device and the operation terminal." *Id*. at 184:24-185:13. Dr. Adams, however, later admitted that the "operation panel" limitation was included in the '507 patent, and noted that the '507 patent taught how an accounting unit could keep the control unit informed of current status by sending an unsolicited message to the control unit after the device's powers was turned on – i.e., that it taught the initiation of communication. *Id*. at 186:14-187:10.

- testified that only two limitations of claim 2 of the '289 patent are missing from the SCSI-2 specification and the Laserwriter reference. Indeed, Dr. Adams testified that a general purpose computer could not be a computer for the purposes of '289, and that the SCSI-2 specification did not teach the concept of storing data. He also, however, conceded that the Markman Order did not prevent a general purpose computer from being deemed a computer under '289, *see id.* at 158:7-20, and testified that the SCSI-2 specification taught that information could be "stored in non-volatile memory," typically inside the computer. *Id.* at 223:8-224:3.

- testified that only two limitations of claim 31 of the '678 patent are missing from

> the SCSI-2 specification and the LaserWriter. Indeed, he claimed that a general purpose computer is not a "computer" under '678, and that claim 31 did not teach that the SYSSTART file would initiate communication with the computer. However, as explained above, Dr. Adams later conceded that a "general computer" was a "computer" under this Court's Markman Order, and that the Laserwriter reference taught that (i) if the printer was set up to run the SYSSTART file, and (ii) if the parameter of model identification had been programmed in, then the model identification information would be transmitted to the computer. *Id*. at 225:3-16.

In light of this testimony, it appears that a jury could reasonably have found, based on the testimony of both Dr. Fredriksen and Dr. Adams, that 12 of the 18 claims were anticipated by the prior art.[2]

Turning next to the testimony on the remaining 6 claims at issue – claim 69 of the '289 patent and claims 4, 19, 77, 94 and 141 of the '120 patent – the Court holds that sufficient evidence was presented at trial from which a jury could reasonably find that all such claims were anticipated by the prior art. The Court will address each set of claims in turn.

a. Claim 69 of the '289 patent and claim 141 of the '120 patent.

Claims 69 and 141 require that the operation terminal transmit its identity to the business office device.[3] The parties agreed that the "identity of the operation terminal" as referred to in

---

[2] The Court's ruling is also motivated by concerns of fairness. Indeed, to allow Ricoh to now distance itself from Dr. Adams' testimony, after Pitney Bowes relied on his concessions in constructing its own case, seems unjust.

[3] Claim 69 of the '289 patent claims:

> A method for communicating between a business office device and an operation terminal, comprising the steps of:
> storing, in a memory of the business office device, state data of the business office device;
> transmitting the state data to the operation terminal which is separate from the business office device and connected to the business office device;

claim 69, should be understood to mean "[a]ny indicia, such as a model number, a serial number, etc., that corresponds to the operation terminal," and that "identification of the computer," as referred to in claim 141, should be interpreted as "[a]ny indicia, such as a model number, a serial number, etc. that corresponds to the computer ("computer" is a disputed claim term)." Affidavit of Katie Lehmann ("Lehmann Aff.") Ex. O.

At trial, Ms. Fredriksen testified that she found the prior art to teach the transmission of the operation terminal's identity, and the processing of that identity. 11/16/06 A.M. Tr. 114:23-25. In particular, Ms. Fredriksen found that the 6500 system taught the transmission of the identity of the operation terminal, *id.* at 115:3-10, and testified that the LaserWriter reference taught that the "LaserWriter stores data including model identification, ROM version and

---

> transmitting a start command from the operation terminal to the business office device which commands an engine of the business office device to start an operation;
> receiving, by the business office device, the start command from the operation terminal;
> starting an operation by the engine of the business office device in response to the start command from the operation terminal;
> transmitting an identify of the operation terminal from the operation terminal to the business office device; and
> processing the identify by the business office device.

Declaration of Larry Friedman ("Friedman Decl.") Exh. 1. Claim 141 of the '120 patent, in turn, claims:

> A computer according to claims 126, 127, 133 or 134 further comprising: a transmitter configured to request an identification of the computer to the business office device.

Friedman Decl. Ex. 3.

transmits it to a separate computer". 11/17/06 A.M. Tr. 46:8-17.[4]

In light of this testimony, the Court holds that there is sufficient evidence from which a jury could reasonably find that claim 69 of the '289 patent and claim 141 of the '120 patent were anticipated. *Philips Elecs. N. Am. Corp. v. Contec Corp.*, 177 Fed. App'x 981, 988 (Fed. Cir. 2006) (in reviewing district court's refusal to displace jury's finding on patent invalidity, holding that "the jury's verdict can only be overturned if the factual findings were not supported by substantial evidence or the facts were not sufficient to support the conclusions necessarily drawn by the jury on its way to the verdict.") (quotations omitted), *quoting Tec Air, Inc. v. Denso Mfg. Mich. Inc.*, 192 F.3d 1353, 1357-58 (Fed. Cir. 1999).

b. Claims 4, 19, 77 and 94 of the '120 patent.

Ricoh contests the anticipation of three limitations of claims 4, 19, 77 and 94 of the '120 patent. Indeed, Ricoh claims that the prior art (1) does not teach that the business office device receives data from a separate device after the separate device transmits data, (2) does not teach that the business office device processes the data it receives, and (3) does not teach the concept of memory storage.[5]

---

4 The Court finds unavailing Ricoh's contention that Dr. Fredriksen failed to address the "after" limitation in claims 4, 19, 77, 94 and 141 of the '120 patent. That limitation was addressed by Dr. Fredriksen at trial. *See* 11/21/06 A.M. Tr. 186:14-187:10, *see also* 11/26/06 A.M. Tr. 114:23-25, 115:3-10, 59:2-8.

5 Claim 4 of the '120 patent claims:

> A business office device according to claim 1, wherein:
> the memory stores the static state data which includes a serial number of the business office device; and
> the means for transmitting transmits the static state data which includes the serial number of the business office device.

The jury was, however, presented with substantial evidence at trial that the '507 patent disclosed a system wherein a business office device could send its serial number to the external device, which would in turn "echo[] that data back to the business office device." 11/16/07 A.M. Tr. 59:15-60:7. Dr. Fredriksen testified that the information so sent would have to be processed to ensure that the message was received properly. *Id.* at 60:14-23.[6] Moreover, Dr. Fredriksen

---

Friedman Decl. Ex. 3. Claim 19 of the '120 patent claims:

> A business office device according to claim 16, wherein:
> the memory stores the static state data which includes a serial number of the business office device; and
> the transmitter transmits the static state data which includes the serial number of the business office device.

*Id.* Claim 77 of the '120 patent claims:

> A printer according to claim 74, wherein:
> The memory stores the static state data which includes a serial number of the printer; and
> the means for transmitting transmits the static state data which includes a serial number of the printer.

*Id.* Claim 94 of the '120 patent claims:

> A printer according to claim 91, wherein:
> the memory stores the static state data which includes a serial number of the printer; and
> the transmitter transmits the static state data which includes the serial number of the printer.

*Id.*

[6] Dr. Fredriksen testified, on November 16, 2007:

> A. This is – I'm going to take a simple example here. Remember we talked about the echoplex communication and its ability to echo back data to make sure that a transmission was successful. So when the business office device sends some data, for instance, it might have been requested to send its serial number over to the external device. The external device

testified at trial that the SCSI reference disclosed a means for transmitting static data to a separate device – "taking data that doesn't change and moving it from the printer to the computer." 11/17/06 A.M. Tr. 24:11-24. Finally, Dr. Fredriksen testified that the '507 patent taught the concept of storage of information such as meter type and serial number. 11/16/07 A.M. Tr. 10:18-11:3, 30:21-31:4.[7]

In light of this testimony, the Court holds that there is sufficient evidence from which a jury could reasonably find that claims 4, 19, 77 and 94 of the '120 patent were anticipated. *See*

---

> then echos that data back to the business office device. The business office device then processes that data to determine whether or not there's been any error in the transmission by comparing what it sent to what it received back in an echo. And once all of the pieces of data that were being exchanged . . . and it's got all the echos back it then makes a determination of whether or not there was a transmission error and it actually sends back an error message to the external device if there was a transmission error.

11/16/06 Tr. 59:15-60:5.

[7] Ricoh contends that the patents asserted in this matter include eight means-plus-function claims: claims 2 and 3 of the '618 patent, claims 4, 77, 94, 147 and 150 of the '120 patent, and claim 68 of the '289 patent, and that Dr. Fredriksen's testimony fails to adequately establish anticipation of these claims. *See* Ricoh Br. at 20-21. "[I]n the context of a means-plus-function claim, the invalidating prior art must disclose not simply a means for achieving the desired function, but rather the particular structure recited in the written description corresponding to that function, or an equivalent thereof." *McGinley v. Franklin Sports, Inc.*, 262 F.3d 1339, 1361 (Fed. Cir. 2001), *citing In re Donaldson Co., Inc.*, 16 F.3d 1189, 1193 (Fed. Cir. 1994).

As explained above, however, the Court finds that Ricoh's expert conceded the anticipation of claims 2, 3, 147 and 150. As for claims 4, 77, 94, 120 and 68, the Court holds, upon review of the testimony of Dr. Fredriksen, that she provided sufficient evidence to meet the Federal Circuit's *McGinley* requirements.

*Philips Elec.*, at 988.[8]

Viewing the evidence in the light most favorable to non-movant, and giving it the advantage of every fair and reasonable inference, the Court therefore holds that Pitney Bowes has produced sufficient evidence from which a jury reasonably could find that Ricoh's Motoyama Patents are invalid by reason of anticipation.

B. RICOH'S MOTION FOR JUDGMENT AS A MATTER OF LAW ON OBVIOUSNESS

Ricoh requests that this Court issue a judgment as a matter of law, pursuant to Federal Rule of Civil Procedure 49(a), that the Motoyama claims were not obvious in light of the prior art. That rule provides that:

> [t]he Court may require a jury to return only a special verdict in the form of a special written finding upon each issue of fact. In that event the court may submit to the jury written questions susceptible of categorical or other brief answer . . . The court shall give to the jury such explanation and instruction concerning the matter thus

---

[8] Ricoh argues that "[f]or all of the asserted claims . . . Ms. Fredriksen failed to address . . . the Federal Circuit's linkage requirement that she detail how each claim is disclosed in a prior art reference." Ricoh Br. at 31.

> Section 112, paragraph 6 [of the Patent Act] states that a means-plus-function claim 'shall be construed to cover the corresponding structure . . . described in the specification.' . . . [P]ursuant to this provision, structure disclosed in the specification is 'corresponding' structure only if the specification or prosecution history *clearly links* or associates that structure to the function recited in the claim. This duty to link or associate structure to function is the quid pro quo for the convenience of employing § 112 . . . .

*B. Braun Med. v. Abbott Lab.*, 124 F.3d 1419, 1424 (Fed. Cir. 1997) (emphasis added), *citing O.I. Corp. v. Tekmar Co.*, 115 F.3d 1583 (Fed. Cir. 1997). The Court does not understand the "linkage" requirement to be applicable in this context.

> submitted as may be necessary to enable the jury to make its findings upon each issue. *If in so doing the court omits any issue of fact raised by the pleadings or by the evidence, each party waives the right to a trial by jury of the issue so omitted unless before the jury retires the party demands its submission to the jury*.

FED. R. CIV. P. 49(a) (emphasis added).

The jury submitted two questions to the Court on this issue:

> (1) "If we decide a claim is literally infringed, do we need to answer the same claim under the doctrine of equivalents?" and
>
> (2) "If we decide a claim is invalid by anticipated prior art, do we need to answer the same claim for obviousness?"

Ricoh suggested to the Court that the answer to both questions should be "a simple no." Lehmann Aff. Ex. J at 3:10. Pitney Bowes, for its part, argued: "we agree that it's no, but I think it should say, you know, *no unless you decide you want to* . . . ." *Id.* at 3:11-12 (emphasis added). The Court ultimately decided to instruct the jury that the response to both questions was "No." *Id.* at 3:14 ("I think no would be sufficient.").

The Court deems Pitney Bowes' pronouncements on the issue sufficient to establish that it did not waive its right to trial by jury of the obviousness issue under Federal Rule of Civil Procedure 49, and holds that there is no basis for Ricoh's request that the Court decide the issue. The Court therefore denies Plaintiff's motion for a judgment as a matter of law on the issue of obviousness, under Rule 50.

### C. PITNEY BOWES' MOTION FOR JUDGMENT AS A MATTER OF LAW

Pitney Bowes, in its own motion for judgment as a matter of law, acknowledges that "there can be no infringement, much less willful infringement, on an invalid claim and that the

issues of infringement are moot when claims are invalid." PB Br. at 1. Pitney Bowes concludes that its motion "becomes important only if the finding of invalidity is overturned." *Id.* Since this Court has refused to overturn the jury's finding of invalidity, Pitney Bowes' motion appears to be, in its own words, moot.

Pitney Bowes then proceeds, however, to argue that the Court should enter a judgment as a matter of law holding that it has not infringed the Motoyama patent, as "Pitney Bowes cannot legally infringe an invalid patent claim." *Id.* at 4. Similarly, Pitney Bowes urges the Court to reverse the jury's finding of willfulness. *Id.* at 6. The Third Circuit has repeatedly held that invalidity and infringement are to be determined independently. *Medtronic, Inc. v. Cardiac Pacemakers, Inc.*, 721 F.2d 1563, 1583 ("Though an invalid claim cannot give rise to liability for infringement, whether it is infringed is an entirely separate question capable of determination without regard to its validity."); *see also Simmons Fastener Corp. v. Illinois Tool Works, Inc.*, 739 F.2d 1573, 1576 (Fed. Cir. 1984) (same), *cert. denied*, 471 U.S. 1065 (U.S. April 29, 1985) (No. 84-1147). Accordingly, the Court will deny Pitney Bowes' motion for a judgment as a matter of law on the issue of infringement, and deny its motion for a judgment as a matter of law on the issue of willfulness.[9]

---

[9] Even if it were appropriate to consider the merits of Pitney Bowes' motion at this time, the Court would deny the motion, as the jury was presented with substantial evidence that Pitney Bowes had infringed the Motoyama patents wilfully.

**CONCLUSION**

For the foregoing reasons, the Court will deny both parties' motions for judgment as a matter of law. An appropriate form of Order accompanies this Opinion.

Dated: May 8, 2007

s/ Garrett E. Brown, Jr.
GARRETT E. BROWN, JR., U.S.D.J.